UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
HUGO MORALES,                                                     :
                                                                 :
                              Plaintiff,                          :
                                                                 :
        -against-                                                 :
                                                                 :        **COMPLAINT**
P&H PAINTING, INC.,                                               :
HELLMAN CONSTRUCTION CO., INC.,                                  :
HOWARD STRAUS, JOSE AYASO,                                        :
and JASON PELEGRIN,                                               :
                                                                 :
                              Defendants.                         :
----------------------------------------------------------------- X

Plaintiff Hugo Morales ("Plaintiff" or "Morales"), by his attorneys Pechman Law Group PLLC, complaining of Defendants P&H Painting, Inc. ("P&H"), Hellman Construction Co., Inc. ("Hellman"), Howard Straus, Jose Ayaso, and Jason Pelegrin (collectively, "Defendants"), alleges:

**NATURE OF THE COMPLAINT**

1.      Morales worked as a painter and supervisor for P&H from approximately August 17, 1999, to March 4, 2026.  Throughout his employment, P&H failed to pay Morales overtime wages at a rate of 1.5 times his regular hourly wage rate for hours worked over forty each workweek and instead paid him at a straight-time rate for all hours worked up to forty-five per workweek. P&H also failed to pay Morales the required prevailing wage rates and supplemental benefits for all hours worked on public work projects for which Hellman served as the general contractor and P&H served as the subcontractor. P&H further failed to provide Morales with (1) wage notices at the time of his hiring or when his wage rates changed, and (2) accurate wage statements with each payment of wages.

2.     Morales brings this Action seeking declaratory and injunctive relief and to recover from Defendants his unpaid overtime wages and prevailing wages and supplemental benefits, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York Labor Law § 190 *et seq.* ("NYLL"), the NYLL's Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA"), and as a third-party beneficiary to Hellman's and P&H's contracts with public agencies.

## JURISDICTION

3.     This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

4.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred at worksites located in this District and P&H maintains its principal place of business in this District.

## THE PARTIES

**Plaintiff Hugo Morales**

5.     Hugo Morales resides in Ossining, New York.

6.     P&H employed Morales as a painter from approximately August 17, 1999 to March 4, 2026.

**P&H Painting, Inc.**

7.     P&H Painting, Inc. is a New York corporation with a principal place of business at 350 Theodore Fremd Avenue Suite 210, Rye, New York 10580.

8.    P&H provides commercial and residential painting services throughout the New York metropolitan area, including in Manhattan, Westchester County, Staten Island, Long Island, and Connecticut.

9.    Throughout Plaintiff's employment, P&H distributed Plaintiff's wages on weekly checks issued by P&H Painting, Inc.

10.    P&H is an "enterprise engaged in commerce" within the meaning of the FLSA.

11.    P&H has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

12.    P&H has had an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint.

13.    P&H is Plaintiff's employer within the meaning of the FLSA and the NYLL.

**Hellman Construction Co., Inc.**

14.    Hellman Construction Co., Inc. is a New York corporation that maintains its principal place of business at 79 Water Mill Lane, Great Neck, New York 11021.

15.    Hellman describes itself as an "industry leader" that provides "all services from carpentry to masonry and general labor" and has "built its reputation for superior construction and strong client relations in the New York metropolitan area" since 1946. *See* https://www.hellmanconstruction.com (last visited June 11, 2026).

16.    On information and belief, Hellman has entered into contracts with public agencies to serve as a general contractor on public work projects in New York.

17.    On information and belief, Hellman's contracts with public agencies required Hellman to ensure that all subcontractors, including P&H, pay prevailing wages and supplemental benefits to workers performing labor on those public work projects.

3

**Defendant Howard Straus**

18.     Defendant Howard Straus is the owner of P&H.

19.     Throughout Plaintiff's employment, Straus held and exercised authority over personnel decisions at P&H, including the authority to hire and fire employees, set employee schedules and wage rates, and maintain personnel records.

20.     Straus determined the wage rates of P&H employees, including the wage rates of Plaintiff.

21.     Straus required P&H employees, including Plaintiff, to work more than forty hours per workweek, and implemented the practice of paying Plaintiff and other P&H employees at straight-time rates for all hours worked up to forty-five per workweek.

22.     Straus exercised sufficient control over P&H's operations and Plaintiff's employment to be considered Plaintiff's employer under the FLSA and NYLL.

**Defendant Jose Ayaso**

23.     Defendant Jose Ayaso is a manager at P&H and serves as its Chief Executive Officer.

24.     Throughout Plaintiff's employment, Ayaso hired and paid P&H employees, including Plaintiff.

25.     Throughout Plaintiff's employment, Ayaso signed paychecks issued to Plaintiff by P&H.

26.     Ayaso held and exercised authority over personnel decisions at P&H, including the authority to hire and fire employees, set employee schedules and wage rates, and maintain personnel records

27.     Ayaso, along with Pelegrin terminated Plaintiff.

4

28.     Ayaso, together with Straus and Pelegrin, implemented the practice of paying P&H employees, including Plaintiff, at straight-time rates for all hours worked up to forty-five per workweek, rather than at the overtime rate of one and one-half times the regular rate for hours worked over forty per workweek.

29.     Ayaso exercised sufficient control over P&H's operations and Plaintiff's employment to be considered Plaintiff's employer under the FLSA and NYLL.

**Defendant Jason Pelegrin**

30.     Defendant Jason Pelegrin is a manager at P&H and the son-in-law of Defendant Straus.

30.     Throughout Plaintiff's employment, Pelegrin held and exercised authority over personnel decisions at P&H, including the authority to hire and fire employees.

31.     Pelegrin along with Ayaso, terminated Plaintiff.

32.     Pelegrin, together with Straus and Ayaso, implemented the practice of paying P&H employees, including Plaintiff, at straight-time rates for all hours worked up to forty-five per workweek, rather than at the overtime rate of one and one-half times the regular rate for hours worked over forty per workweek.

33.     Pelegrin exercised sufficient control over P&H's operations and Plaintiff's employment to be considered Plaintiff's employer under the FLSA and NYLL.

**FACTUAL ALLEGATIONS**

34.     Throughout his employment with P&H, Morales performed painting and supervisory duties at commercial and residential worksites throughout the New York metropolitan area.  His work duties included spray painting, brush painting, organizing workers, coordinating with building superintendents, and delegating duties to a crew of approximately fifteen to twenty employees.

35. Throughout his employment, Morales regularly worked from 7:00 a.m. to 2:30 p.m., Monday through Saturday, and worked additional weekly shifts from 3:00 p.m. up until 8:00 p.m. when needed, for a total of approximately forty to fifty four hours per workweek.

49. From approximately late 2020 through 2021, P&H paid Morales $36 per hour for all hours up to forty-five per workweek.

50. For example, for the workweek ending January 11, 2021, P&H paid Morales gross wages of $1,728, equal to $36 per hour for forty-five hours worked at straight time and $54 per hour for two hours worked over forty-five.

51. For example, for the workweek ending May 23, 2022, P&H paid Morales $36 per hour for forty-five hours worked at straight time and $54 per hour for two hours worked over forty-five.

52. From approximately August 20, 2024, to the end of his employment, P&H paid Morales $38 per hour for all hours worked up to forty-five per workweek.

53. For example, for the workweek ending October 14, 2024, P&H paid Morales $38 per hour for forty-five hours worked at straight time and $57 per hour for two hours worked over forty-five.

54. Throughout his employment, P&H paid Morales at his regular straight-time hourly rate for all hours worked up to forty-five per workweek, and only paid overtime at a rate of one and one-half times his regular rate for hours worked above forty-five per workweek.

38. P&H did not furnish Morales with a wage notice at the time of his hire or when his wage rates changed throughout his employment.

39. P&H did not furnish Morales with accurate wage statements accompanying each payment of wages throughout his employment.

6

40. P&H intentionally failed to provide wage notices and accurate wage statements to Morales in violation of the WTPA to conceal the precise number of hours Morales worked and the overtime wage rates to which he was entitled, in order to inhibit his ability to advocate for proper payment of wages.

41. P&H's WTPA violations led to and formed part of P&H's scheme to deprive Morales of his overtime wages due as alleged in this Complaint.

**Defendants' Failure to Pay Plaintiff Prevailing Wages**

55. On information and belief, Hellman has entered into contracts with New York public agencies to serve as a general contractor on public work construction projects meant to benefit the public (the "Public Work Projects").

56. On information and belief, P&H served as Hellman's subcontractor on the Public Work Projects.

57. On information and belief, Hellman's contracts with the New York public agencies for the Public Work Projects, and P&H's subcontracts with Hellman, required Defendants to pay prevailing wage rates and supplemental benefits to all laborers and workers performing work on those public work sites, including Morales.

58. For painting work performed by Morales on the Public Work Projects, Morales was a third-party beneficiary to Hellman's and P&H's contracts for the Public Work Projects.

59. For painting work performed by Morales on the Public Work Projects, Defendants were required to pay Morales required prevailing wage rates and supplemental benefits.

60. Morales worked on Public Work Projects at various locations in New York City for Hellman and P&H, including at Columbia University New York Presbyterian,

7

located at 51 Audubon Avenue, New York, New York 10032, and at other locations in upper Manhattan, including within six years of the filing of this Complaint.

61.    Upon information and belief, for his work on Public Work Projects, Defendants were required to pay Morales at the applicable prevailing wage rates and supplemental benefit rates set by the New York City Comptroller for painters performing public work. For example, the City of New York required contractors to pay Painter (Brush and Roller) workers at least $44.75 per regular hour plus supplemental benefits of at least $44.13 per hour worked, effective July 1, 2025 through June 30, 2026.

62.    Defendants failed to pay Morales the required prevailing wage rates and supplemental benefits for his work performed on Public Work Projects, and instead paid Morales his regular hourly rate of $38 per hour (or the applicable lower rate in effect at the time of the work) for all hours worked, including hours worked at Public Work Projects, without any supplemental benefits.

## FIRST CLAIM
### (FLSA – Unpaid Overtime)

63.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

64.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a), and employed Plaintiff.

65.    Defendants were required to pay Plaintiff one and one-half (1½) times his regular hourly wage rate for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

66.    Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the FLSA.

67.    Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff the required overtime wage rates.

68. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiff's compensation.

69. As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**SECOND CLAIM**
**(NYLL – Unpaid Overtime Wages)**

70. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

71. Defendants were Plaintiff's employers within the meaning of NYLL §§ 190, 651(6), 652, and supporting New York State Department of Labor ("NYDOL") regulations.

72. Under the NYLL and its supporting NYDOL regulations, Defendants were required to pay Plaintiff one and one-half (1½) times his regular hourly wage rate for all hours worked in excess of forty per workweek.

73. Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the NYLL.

74. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages due.

75. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

9

**THIRD CLAIM**
**(Breach of Contract – Prevailing Wages)**

76.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

77.    On information and belief, Defendant Hellman has entered into valid and binding contracts with New York public agencies to provide painting and construction services for Public Work Projects, and Defendants Hellman and P&H have entered into subcontracts for P&H to perform work on the Public Work Projects.

78.    On information and belief, the contracts that Hellman entered into with the New York public agencies for Public Work Projects, and P&H's subcontracts with Hellman, required Defendants to pay prevailing wages and supplemental benefits to all laborers, mechanics, and workers performing work on those public work sites, including Plaintiff.

79.    Defendants Hellman and P&H breached their respective agreements with New York public agencies and with each other by failing to pay Plaintiff at the required prevailing wage rates and supplemental benefits for work performed on the Public Work Projects.

80.    Plaintiff was a third-party beneficiary to Defendants' contracts with New York public agencies for Public Work Projects.

81.    The prevailing wages and supplemental benefits Defendants were required to pay Plaintiff for work performed on the Public Work Projects were immediate, rather than incidental, benefits as a material term in the contracts between Defendants and New York public agencies.

82.    As a result of Defendants' failure to pay Plaintiff the required prevailing wage rates and supplemental benefits, Plaintiff is entitled to recover from Defendants,

10

jointly and severally, his unpaid prevailing wages and supplemental benefits and pre- and post-judgment interest.

## FOURTH CLAIM
### (WTPA – Failure to Provide Wage Notices)

83. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

84. The NYLL's WTPA requires employers to provide all employees with written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

85. Defendants failed to furnish Plaintiff at the time of hiring, or whenever his rate of pay changed, with a wage notice listing, *inter alia*, the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular payday designated by the employer in accordance with NYLL § 191; the prevailing wage rates and benefit supplements; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law, in violation of NYLL § 195(1).

86. As a result of Defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-b).

## FIFTH CLAIM
### (WTPA – Failure to Provide Accurate Wage Statements)

87. Plaintiff repeats and incorporates all paragraphs above by reference.

88. The NYLL's WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

11

89.   Defendants failed to provide Plaintiff with accurate wage statements at the end of every pay period listing, *inter alia*, the regular, overtime, and prevailing wage rates; the number of regular, overtime, and prevailing wage hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL § 195(3).

90.   As a result of Defendants' violations of NYLL § 195(3), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court issue an Order:

a.   declaring that Defendants willfully violated the overtime wage provisions of the FLSA and the NYLL as alleged herein;

b.   declaring that Defendants Hellman and P&H breached their contracts for Public Work Projects to which Plaintiff was a third-party beneficiary as alleged herein;

c.   declaring that Defendants willfully violated the wage notice and wage statement provisions of the WTPA;

d.   enjoining Defendants from further violations of the FLSA and NYLL;

e.   awarding Plaintiff his unpaid prevailing wages and supplemental benefits;

f.   awarding Plaintiff his unpaid overtime wages, liquidated damages, statutory damages, and pre- and post-judgment interest pursuant to the FLSA and NYLL;

g.   awarding Plaintiff his reasonable attorneys' fees and costs pursuant to the FLSA and NYLL; and

12

h.    awarding such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands all issues in this Action be tried before a jury.

Dated:  New York, New York
       July 16, 2026

PECHMAN LAW GROUP PLLC

By: _____
    Louis Pechman
    Camille A. Sanchez
    Pechman Law Group PLLC
    488 Madison Avenue, 17th Floor
    New York, New York 10022
    (212) 583-9500
    pechman@pechmanlaw.com
    *Attorneys for Plaintiff*